**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | 2024 CV 2466 |
| | ) | |
| v. | ) | |
| | ) | Judge John F. Kness |
| THE CITY OF CHICAGO; KENNETH | ) | |
| BOUDREAU; JAMES CASSIDY; J. | ) | Magistrate Young B. Kim |
| GANDURSKI; JOHN HALLORAN; | ) | |
| RICHARD ZULEY; STEVEN | ) | |
| KLACZYNSKI; and COOK COUNTY, | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

<u>**PARTIES' JOINT MOTION OVER COMPETING PROTECTIVE ORDERS**</u>

Per the Court's December 23, 2024, minute order, (Dkt. 65), the parties could not agree to all the provisions in their competing proposed Confidentiality and HIPAA and Mental Health protective orders, so below, the parties explain why their proposed protective orders should be entered. Defendants' proposed Confidentiality and HIPAA and Mental Health protective orders are attached as Exhibits 1 and 2, and Plaintiff's proposed orders are attached as Exhibits 3 and 4.

**I. DEFENDANTS' POSITION ON THE CONFIDENTIALITY AND HIPPA PROTECTIVE ORDERS**

**INTRODUCTION**

Plaintiff Wright sued Defendants under § 1983 alleging he was wrongfully charged, detained, convicted, and incarcerated for 28 years for the 1994 murders of Tyrone Rockett and Robert Smith because of Defendants' conduct. *See* Pl.'s Compl. Dkt. 1. Wright also claims he suffered "profound" and "tremendous" physical injuries and mental and emotional distress for which he still has not fully recovered from and will be dealing with for the rest of his life. *See,*

*e.g.*, *id.*, ¶¶ 102–05, 111; *see also* Exhibit 5, Pl.'s Resp. to Def. Halloran's First Set of Interrogs. ("Pl's Rog. Resp."), No. 11, at 10–12.

Discovery in this matter will thus entail the production of highly sensitive and non-public information, including, Plaintiff's medical and mental health records and confidential CPD records. While the parties agree that there is good cause for entry of a Confidentiality Protective Order ("Confidentiality Order") and HIPAA and Mental Health Protective Order ("HIPAA Order") they disagree as to the appropriate provisions of each order. As explained in more detail below, to properly facilitate and protect these sensitive records, Defendants request that the Court enter their proposed Confidentiality and HIPAA Orders attached as Exhibits 1 and 2, and submitted to the Court's proposed order email.

Before filing this motion, Defendants' counsel communicated with Wright's counsel about their proposed protective orders via telephone on November 8 and 22, 2024, to resolve these disputes. Ex. 6, Correspondence. Regarding the Confidentiality Order, Wright's counsel objected to two provisions within Defendants' proposed protective order that are at issue here:

1. Under paragraph 2, which defines "Confidential Information," Defendants' proposed language includes marking confidential "employment, disciplinary, or other information" that contains sensitive information of the parties and non-party employees of the City of Chicago and the Cook County State's Attorney's Office, and specifically at issue are"disciplinary actions, files and attachments. . . ." Ex. 1, Defs.' Proposed Protective Order, at ¶ 2(a), (h).

2. Under paragraph 6, Defendants' proposed language includes redacting personal identifying information ("PII"), including "social security numbers, dates of birth, and information covered by the Juvenile Court Act" and "for security reasons, all references to a current or former individual state's attorneys and police officer's confidential information about [their] family." *Id.* at ¶ 6.

Good cause exists for including Defendants' proposed language because it protects the mass dissemination of sensitive information about the parties and non-party employees of the City of Chicago and the Cook County State's Attorney's Office.

Regarding the HIPAA Order, Wright requested that he be allowed to review any mental health records for privilege before Defendants' receipt of those records. But a privilege review is unwarranted because Wright waived any applicable privilege by (1) alleging in his Complaint that Defendants caused him to suffer psychological and mental health damages and (2) providing sworn discovery responses elaborating on the severity of these injuries. In all, the parties are at an impasse. For the reasons discussed below, Defendants' request the Court to enter their proposed orders over Wright's objections.[1]

## LEGAL RULE

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In general, court proceedings are open to public scrutiny. But not all materials produced in discovery that are unfiled in court proceedings may be freely available or disseminated to the public. Courts consistently provide confidential protection for the kind of sensitive materials at issue here that have not been filed in a court proceeding.

In *Seattle Times Co. v. Rhinehart*, the Supreme Court recognized that information obtained through discovery—much of which "may be unrelated, or only tangentially related" to the case—"has significant potential for abuse," which "may seriously implicate privacy interests of litigants and third parties." 467 U.S. 20, 33, 35 (1984). Indeed, "implicit in the broad purpose

---

[1] Wright does not challenge Defendants' receipt of records regarding his physical injuries, nor can he as he has placed his physical health squarely at issue in this case by claiming a multitude of physical injuries caused, in part, by Defendant's misconduct. *See* Pl.'s Compl., Dkt. 1, ¶¶ 102–05; Ex. 5 , Pl.'s Rog. Resp. at 11.  (claiming injuries to his shoulder and rotator cuff, right hand and ankle, and contraction of an infectious disease); *See e.g.*, *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964) (plaintiff in negligence action who asserts mental health or physical injury, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury); 735 ILCS 5/8-802(4).

and language" of Rule 26(c) is to protect a person's privacy interests from such abuses. *Id.* at 35, n. 21. Thus, the Supreme Court held that the public's right of access is limited to traditionally publicly available sources of information, and "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id.* at 20, 33. *See also Bond v. Utreras*, 585 F.3d 1061, 1073–74 (7th Cir. 2009) ("There are good reasons to treat the public's right to access filed and unfiled discovery materials differently" as there is no constitutional, statutory, or common law right to these materials.)

Moreover, district courts have broad discretion to manage the discovery process and the authorization to order discovery of any material relevant to the litigation. *See Geiger v. Aetna Life Ins. Co.*, 845 F. 3d 357, 365 (7th Cir. 2017). During discovery, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Because the requested discovery seeks information that relates to plaintiff's claims for damages, the discovery is relevant under Rule 26(b)(1)." *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 518 (N.D. Ill. 2018).

Federal common law determines whether privilege applies in federal causes of action even if accompanied by supplemental state law claims. *See Northwestern Memorial Hospital v. Ashcroft*, 362 F. 3d 923, 926 (7th Cir. 2004). Relevant here, the Supreme Court recognized a psychotherapist-patient privilege in *Jaffee v. Redmond*, but that privilege is subject to waiver. *Jaffee v. Redmond*, 518 U.S. 1, 15 n. 14 (1996). By extension, "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Doe v. Oberweis Dairy*, 465 F. 3d 704, 718 (7th Cir. 2006).

## ARGUMENT

**A. This Court should enter Defendants' proposed confidentiality order.**

Despite Wright's objections, numerous courts in this District—including this Court in *Munoz v. Guevara* and in *Ochoa v. Lopez*—have entered the protective order that Defendants are proposing here. *Munoz v. Guevara*, 23 C 3210, Dkt. 116, at 5 (N.D. Ill. May 7, 2024) (Kim, MJ); *Ochoa v. Lopez*, 20-CV-2977, Dkt. 59 (N.D. Ill. May 2, 2022) (Kim, MJ) ("The court understands Plaintiff's concerns, but they are outweighed by Defendants' privacy interests"); *accord Martinez v. Guevara*, 23-C-1741, Dkt. 154, at 3 (N.D. Ill. April 15, 2024) ("Several courts in this district have considered this exact dispute and found good cause to adopt language that is identical, or nearly identical, to the language" Defendants' propose). Accordingly, Defendants request that the Court enter Defendants' proposed protective order over Wright's objection. The scope of discovery will encompass the production of highly sensitive, non-public, and confidential information. This private and sensitive information should not be made generally available to the public, thus necessitating the entry of Defendants' proposed protective order. *See* Ex. 1, Defs.' Proposed Protective Order.

**i. Good cause exists to mark employment, disciplinary, and other sensitive information as confidential.**

Defendants' proposed protective order is consistent with this District's model order with the inclusion of additional language regarding the protocol for designating particular information, specifically disciplinary files, as "Confidential Information" under the terms of the order as stated under paragraph 2:

> As used in this Order, "Confidential Information" means . . . (a) information protected from disclosure by statute, including the Illinois Freedom of Information Act (FOIA), 5 ILCS 140/1, *et seq.* . . . and (h) employment, disciplinary or other information that is of a sensitive nature regarding plaintiffs, defendants, non-party witnesses, and non-party employees of the City of Chicago

and Cook County State's Attorney's Office. Such information includes, but is not limited to, private information in personnel files, such as employment applications, performance evaluations, tax forms, requests for medical leave and the like as well as personal and family information of police officers and state's attorneys, including residential information; and (i) any information contained within the following file materials that are otherwise prohibited from public disclosure by statute:

Any disciplinary actions, files and attachments to such files generated by the investigation of deaths in custody, uses of deadly force, and complaints of misconduct by Chicago police officers (generally referred to as "Log Number" files, "Complaint Register" (CR) files, "Universal" (U) files, or "Extraordinary Occurrence: (EO) files, or "Non-Disciplinary Intervention" (NDI) files) (collectively hereinafter referred to as "Log Files"), or by internal Chicago Police Department "Summary Punishment Action Requests" (SPARs). The parties reserve the right to seek greater protection of information or documents designed as Confidential Information through Court intervention or by agreement of the parties.

Ex. 1, Defs.' Proposed Protective Order, at ¶ 2(a), (h).

Courts have found that these records "routinely contain highly personal information" which would "unfairly and gratuitously invade . . . privacy." *O'Malley v. Vill. of Oak Brook*, No. 07 C 1679. 2008 WL 345607, at *2 (N.D. Ill. Feb. 6, 2008). Moreover, while Illinois statutes do not control this Court's determination, such statutes provide helpful guidance in determining whether there is good cause for defining various information contained within disciplinary files as confidential. *See, e.g.*, *Johnson v. Kemps*, No. 09 CV 4857, at 2011 WL 2550507, at *2 (N.D. Ill. June 20, 2011). For example, although there is no longer a blanket exemption from public release for CR Files, (*see Kalven v. City of Chi.*, 2014 IL App. (1st) 121846 (1st Dist. 2014)), Section 7 of IFOIA still sets forth exemptions to public disclosure of specific sensitive information contained within various portions of CR Files. *See* 5 ILCS 140/7. These include names of complainants and third parties, other private information of individuals, such as social security numbers and personal addresses, and information that needs to be protected for safety and security reasons. *See, e.g.*, *id.*, ¶¶ 5 (1)(a)–(d).

6

Thus, the inclusion of Defendants' proposed language allows Wright to obtain unredacted disciplinary and CR files from the City to gather information relevant to his claims. But the dispute over the additional language in paragraph 2 arises because Wright wants redacted versions of the disciplinary and CR files for purposes of public dissemination. Wright's position disregards binding precedent that discovery is "conducted in private as a matter of modern practice" and that "secrecy is fine at the discovery stage, before the material enters the judicial record." *See Bond*, 585 F.3d at 1075 (citing *Seattle Times*, 467 U.S. at 32, 34).

In all, Defendants' proposed language under paragraph 2 tracks protective orders entered by numerous courts, including this Court, that contain similar, if not, identical language. *See, e.g.*, Group Ex. 7, *Martinez v. Guevara*, 23-cv-01741, Dkt. 155, ¶ 2 (N.D. Ill. April 26, 2024) (Finnegan, MJ); *Munoz v. Guevara*, 23 C 3210, Dkt. 117, ¶ 2 (N.D. Ill. May 7, 2024) (Kim, MJ); *Ochoa v. Lopez*, 20-CV-2977, Dkt. 73, ¶ 2 (N.D. Ill. May 2, 2022) (Kim, MJ); *Davila v. Guevara*, 23-cv-01739, Dkt. 92, ¶ 2 (N.D. Ill. Nov. 29, 23). Accordingly, there is good cause for Defendants proposed language permitting the designation of information, such as personnel files, disciplinary actions, and juvenile records, as confidential. *See Munoz*, Dkt. 116, at 2 (Entering defendants' proposed confidentiality order by reasoning that "Defendants are unwilling participants in this lawsuit and that they have legitimate interests in protecting privacy and reducing the burden and expense of producing discovery").

ii. **Courts Consistently Endorse the Protection of PII to Protect Privacy Rights.**

Defendants' proposed protective order provides for the redactions of PII under paragraph 6 for privacy and security reasons. Paragraph 6 states:

> **Redaction of Personal Identifying Information.** Notwithstanding the foregoing provisions, the responding party shall have the right to redact from all documents produced in discovery social security numbers, dates of birth, and information covered by the Juvenile Court Act, as well as, for security reasons, all references

> to a current or former individual state's attorneys and police officer's confidential information about him/herself and his/her family, including but not limited to, social security number, home address, home and cellular telephone number(s), personal email address(es), the names of family members and the names of insurance beneficiaries.

Ex. 1, Defs.' Proposed Protective Order, at ¶ 6.

This section is necessary to protect the PII of current and former non-defendant police officers, state's attorneys, and their families. Allowing such information to be produced would not only violate the privacy rights of non-defendants, but it would also pose a safety risk for non-defendant officers/state's attorneys and their families. *See Prince v. Kato*, No. 18 C 2952, 2019 WL 3554533, at *5 (N.D. Ill. July 20, 2019) (finding "this type of sensitive, personal identifying information reasonably necessary and appropriate to protect in this discovery production – for example, social security numbers or names of the officer's family members have no relevance to the underlying issues"). If Wright requires certain PII to locate a non-defendant police officer or state's attorney witness, such information may be provided on a witness-by-witness basis.

Furthermore, the dissemination of identifying information for other non-parties, such as social security numbers and dates of birth, would be a violation of their privacy rights. For example, in *Negron v. Guevara*, the court observed that dates of birth and social security numbers are "virtual currency in our technology-dependent society" and "should be protected from disclosure." Group Ex. 7, No. 18 C 2701, Dkt. 72, at 2 (N.D. Ill. July 24, 2020). As to any concerns counsel for Wright has about Defendants' unilateral access to the information giving them a litigation advantage, Defense counsel cannot find an instance in which they have used the redacted information to their advantage, and Defense counsel do not plan to start now. Indeed, Wright is unable to identify a time when Defense counsel have ever done so.

In the past, Defense counsel have informed counsel for Wright in other cases that if they need someone's information from a certain document where PII is redacted, they can simply ask, and Defense counsel would work with them to identify the contact information they need. *See, e.g.*, *Davila v. Guevara*, 23-CV-1739, Dkt. 88, at 15–16 (N.D. Ill. Nov. 3, 2023) ("I adopt the defendant's proposed language . . . I understand the plaintiff's concerns about redactions making materials unintelligible. If this becomes an issue, the parties should confer to try to resolve the matter. If necessary, either party may raise this issue with [the court]"); *see also Gonzalez v. Guevara*, No. 22 CV 6496, Dkt. 140, at 7 (accepting defendants' representation that it would meet and confer with plaintiff regarding the need for additional contact information to locate witnesses whose identifying information had been redacted) (*citing Prince*, 2019 WL 3554533, at *5 (same)). Indeed, it is typically Defendants that ask plaintiffs for contact or identifying information. After all, Wright's counsel has been involved in the investigation of Wright's case for years during his post-conviction proceedings, so it is unlikely that Wright's counsel has not already made contact with all witnesses he believes are relevant to his case.

At bottom, multiple courts have agreed to the inclusion of paragraph six over plaintiff's objection. *See* Group Ex. 7 *Munoz*, Dkt. 116 (Kim, MJ); *Ochoa*, Dkt. 59 (Kim, MJ); *Rodriguez v. Guevara*, 18-CV-7951, Dkt. 156 (N.D. Ill. June 29, 2021); *Iglesias v. Guevara*, 19-CV-6508, Dkt. 104, (N.D. Ill. Dec. 16, 2020); *Bouto v. Guevara*, 19-CV-2441, Dkt. 137 (N.D. Ill. June 23, 2020); *Gomez v. Guevara*, 18-CV-3335, Dkt. 75 (N.D. Ill. Aug. 9, 2019). Accordingly, there is good cause for Defendants proposed language for redacting PII.

**B. This Court should enter Defendants' proposed HIPAA Order.**

    **i.  Wright waived the psychotherapist-patient privilege by putting his psychological state at issue.**

Wright brings a claim for Intentional Infliction of Emotional Distress against Defendants and described his emotional and psychological injuries as "profound" and "tremendous" alleging he suffered "tremendous damage, including…psychological trauma and emotional damages" that he still has not fully recovered from and will be dealing with for the rest of his life. *See* Pl.'s Cmplt., Dkt. 1, ¶ 105; Ex. 5, Pl.'s Rog. Resp., at 10–12. Even without those descriptions, the fact that Wright claims he was wrongfully imprisoned for 28 years suggests he will claim severe emotional distress. *See e.g.*, *Taylor v. City of Chi.*, No. 14 C 737, 2016 WL 5404603, at *4 (N.D. Ill. Sept. 18, 2016).

Wright intends to rely on his alleged emotional and psychological injuries to argue for a significant compensatory damages award of tens of millions of dollars. Consequently, he has placed his mental and emotional state at issue in this case and has waived his psychotherapist-patient privilege. *E.g.*, Ex. 8, *Kluppelburg v. Burge*, Case No. 13 C 3963, Dkt. 136, at 2 (N.D. Ill. April 10, 2014) (Valdez, J.) ("Plaintiff misunderstands that, by putting his psychological history at issue, he has already waived any such privileges related to his psychological records."); Ex. 9, *Coleman v. City of Chi.*, Case Nos. 17 CV 8696, 18 CV 998, Dkt. 180, at 8 (N.D. Ill. Dec. 23, 2019) (Harjani, J.) (holding that the plaintiff "has already waived the privilege, as evidenced by his pleadings, discovery responses, and document productions."); Ex. 10, *Jakes v. City of Chi.*, Case No. 19 CV 2204, Dkt. 110, at 6 (N.D. Ill. Sept. 4, 2020) (Jantz, J.) ("Plaintiff waived the privilege by electing to pursue damages for the unusual distress he alleges that he suffered" where "Plaintiff has already made strategic choices to plead and pursue an IIED claim and to allege damages that are out of the norm").

**1. Courts broadly construe waiver of the psychotherapist-patient privilege.**

"If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Doe v. Oberweis Diary*, 456 F. 3d 704, 718 (2006). Several district courts hold that *Oberweis* stands for a broad waiver of the psychotherapist-patient privilege, in that any claim for damages based on psychological or emotional injury puts the plaintiff's mental state at issue in the case and results in a broad waiver of privilege.[2]  *See, e.g.*, *Laudicina*, 328 F.R.D. at 514 ("The broad language [of *Oberweis*] hedges no bets… [i]ndeed, the *Oberweis* opinion did not even use qualifying words or phrases that courts often use, such as 'generally,' 'under these facts' and 'in this particular case' to allow wiggle room in the analysis."); *Taylor*, 2016 WL 5404603, at *2–4 ("[T]he *Oberweis* court adopted the words reflecting the broad approach" and "is binding precedent on this issue, [so this court] will apply the broad approach."); *Hardy v. City of Milwaukee*, No. 13–CV–769–JPS, 2014 WL 12651233, at *1 (E.D. Wisc. May 19, 2014) ("Based on the Seventh Circuit's clear statement of the law in *Oberweis Dairy*, Defendants' motion to compel will be granted because Hardy seeks damages for 'emotional distress, humiliation, and trauma' independent of his 'physical pain.'"); *Price v. Wrencher*, No. 13-cv-1785, 2014 WL 5035096, at * 2 (N.D. Ill. Jan. 21, 2014) ("By alleging she has suffered 'extreme' and 'severe' emotional harm and trauma… [plaintiff] has brought her psychological state at issue in this suit, such that defendants are entitled to discovery with respect to her [mental health information]."); Ex. 11, *Pittman v.*

---

[2] Since *Oberweis*, district courts have analyzed three approaches to determining when and to what extent a plaintiff waives his psychotherapist-patient privilege: (1) the broad approach, discussed *infra*; (2) the narrow approach, which instructs the privilege is waived only when the plaintiff "affirmatively relies on her communications with the psychotherapist or calls the therapist as a witness," *Taylor* 2016 WL 5404603, at *2; or (3) the middle ground, which finds the privilege remains intact if the plaintiff seeks only "garden-variety" emotional/psychological damages. *Flowers v. Owens*, 274 F.R.D. 218, 224–25 (N.D. Ill. 2011). Other courts in this district who have disagreed that the Seventh Circuit in *Oberweis* created precedent for the broad approach, have applied the middle ground approach.  *See e.g. Flowers v. Owens*, 274 F.R.D. 218, 224-25 (N.D. Ill. 2011); *Awalt v. Marketti*, 287 F.R.D. 409, 419 (N.D. Ill. Oct. 29, 2012). Defendants are not aware of any Courts in this district who have applied the narrow approach.

*Halloran*, Case No. 23-CV-14786, Dkt. 127 (N.D. Ill. Oct. 29, 2024) (Finnegan, J.) ("In so ruling, the Court applies the broad approach to waiver of the psychotherapist-patient privilege").

This broad waiver mandates that Defendants are entitled to Wright's mental health and substance abuse treatment records directly from his treaters without Wright first reviewing them for privilege. Indeed, in accordance with existing precedent in this Circuit, the privilege has already been waived.

### 2. Even "Garden-Variety" emotional damages waive the privilege.

Similarly, Wright cannot invoke the old "garden variety emotional distress" distinction to avoid discovery of his mental health records. As set forth in *Taylor*, the garden-variety approach is inconsistent with Seventh Circuit precedent, which unequivocally held that "if a plaintiff by seeking damages for his emotional distress places his or her psychological state at issue, the defendant is entitled to discovery of any records of that state." 2016 WL 5404603, at *3. From a practical standpoint in a reversed conviction case, the garden-variety approach suffers from a definitional ambiguity and is difficult to apply. *Id.* at *4. And, as evidenced by Wright's pleadings and discovery responses, the garden-variety approach is unnecessary to even consider. *See Laudicina*, 328 F.R.D. at 515–18 (finding garden-variety damages still place the plaintiff's mental health at issue). Even if Wright could limit his emotional distress claim, the precedential holding in *Oberweis* provides a clear directive that when a plaintiff puts his mental state at issue in the case, defendants are entitled to the records of that mental state. 456 F. 3d at 718; *see also Hardy*, 2014 WL 12651233, at *1 ("[P]laintiff continues to cite federal district court cases for the proposition that a plaintiff who elects to limit his emotional distress claim to 'garden-variety'

emotional damages rather than psychological injuries has not waived the psychotherapist-patient privilege. Controlling Seventh Circuit precedent [Oberweis] holds otherwise.")[3]

Wright's characterizations of his psychological injuries as "profound" "tremendous damage" that "stripped [him] of the various pleasures of basic human experience" and "deprived him of the fundamental freedom to live his life as an autonomous human being" after being "forced to live in a cage punished for a crime he did not commit" from which he still has not recovered over 30 years later only confirm that his injuries are far more than "garden-variety." Moreover, Wright claims that his emotional injuries are permanent in that he will be dealing with them for the rest of his life, which also makes it more than a basic claim of distress. Any attempt to limit discovery about his mental health damages would prove impractical and hinder Defendants' ability to determine the true nature and cause of those injuries. *See Taylor*, 2016 WL 5404603, at *2–4 (discussing the ambiguity and practical difficulties of pursuing "garden-variety" emotional damages without a finding of waiver); *Laudicina*, 328 F.R.D. at 515-518 (same).

Thus, even applying the more limited garden-variety approach, Wright has waived the psychotherapist-patient privilege as to his mental health records. "[D]efendants have a right to defend themselves. If plaintiffs claim damages because of defendants' actions, then defendants should be allowed to discover the bases and relative merits of those damage claims. It is a matter of fundamental fairness." *Laudicina*, 328 F.R.D. at 513; *see also Kronenberg*, 747 F. Supp. 2d at 989 ("[W]aiver is based upon the obvious principle of fairness that a party cannot inject his or her psychological treatment, conditions or symptoms into a case and expect to be able to prevent

---

[3] *See also Laudicina*, 328 F.R.D. at 515; *Taylor*, 2016 WL 5404603, at * 3 (finding other district courts' decisions unconvincing where they minimize or ignore the holding in *Oberweis* due in part because the *Oberweis* discussion on waiver was brief and succinct.)

discovery of information related to those issues.") (citation omitted). As these courts have found, allowing for "garden-variety" emotional damages without a finding that the psychotherapist-patient privilege has been waived is unsound, unfair and goes against Seventh Circuit precedent.

Indeed, as multiple courts in this district have acknowledged in cases where Wright's same law firm has pleaded similar damages and allegations in analogous reversed conviction cases, the alleged damages are simply not garden-variety emotional damages. *See* Ex. 10, *Jakes*, Dkt. 110, at 5–6 (MJ Jantz) ("Plaintiff alleges long-lasting effects from Defendants' actions and from being wrongfully incarcerated for 20 years, including 'extreme suffering, humiliation, fear, nightmares, anxiety, depression and despair… [t]hese allegations go beyond the ordinary emotional effects a plaintiff might allege; they are far more akin to 'symptoms and conditions' [as opposed to garden-variety damages] that Plaintiff developed as a result of Defendants' [alleged] misconduct."); Ex. 9, *Coleman*, Dkt. 180, at 5 (Harjani, J.) ("Coleman was incarcerated for 23 years for a crime that he claims he did not commit. It is hard to conceive of any situation in which these emotional damages claims constitute 'garden variety.'").

## ii. Wright's proposed HIPAA order runs afoul of precedent and only serves to limit Defendants' access to relevant records.

Wright's proposed inclusion of a prior review provision in the HIPAA order serves no legitimate purpose in this litigation. *See* Ex. 12, *Hernandez v. Guevara*, 23 CV 01737, Dkt. 111 (N.D. Ill. May 2, 2024) (Daniel, J.) (denying the plaintiff's request for a HIPAA protective order allowing them a privilege review of mental health records subpoenaed by Defendants, holding that Plaintiff's allegations placed their mental health not only at issue, but beyond the reach of the privilege they sought to assert.); *see also* Ex. 13, *Flores v. Guevara*, Case No. 23 CV 1739, Dkt. 75 (N.D. Ill. Mar. 6, 2024) (Tharp, J.) (finding plaintiff's proposed HIPAA order, which provided a 7-day review period, problematic due to "the opportunity to shield from discovery

documents subpoenaed by the defendants from third parties when the plaintiff's own allegations have made those documents relevant."); *accord* Ex. 14, *Rodriguez v. Guevara*, Case No. 22 CV 6141, Dkt. 118 (N.D. Ill. Jan. 24, 2024) (Harjani, J); Ex. 11, *Pittman*, Case No. 23-CV-14786, Dkt. 127 (finding "that Plaintiff has waived that privilege by seeking damages for mental distress from the incarceration and otherwise, and thereby putting his mental state at issue.").

Instead, Wright's proposed HIPAA protective order merely serves to increase the costs of litigation, delay Defendants' receipt of relevant records, and provide Wright with an unnecessary and unfair method for obstructing discovery. Given that Wright's counsel continuously advocates for a rapid discovery schedule—Wright's counsel pushed to complete depositions even before he had answered written discovery—any delay in Defendants' timely receipt of relevant medical and mental health records is untenable.

The frivolity of the proposed prior review provision is even more pronounced when considering that Wright cannot even articulate whether any actual medical or mental health records may implicate his privilege concerns. When asked about records that Wright was concerned may contain this "privileged" mental health information, Wright only identified his IDOC records, which are relevant to Wright's claims. Wright also rejected Defendants' reasonable proposal to avoid litigation on this issue by agreeing to rely on Wright's subpoena for his own records to IDOC, recognizing that if the records were returnable to Wright, he would still be able to conduct a privilege review regardless of whether such a review was appropriate. Wright refused to accept this compromise and instead, simply identifies other categories of documents with no specificity. Privilege reviews, however, are not necessary when the privilege has been waived and there is no privilege to protect. And privilege reviews certainly do not exist so one party can pick and choose what evidence is favorable to it. *See* Ex. 9, Order from *Nevest*

*Coleman* ("the Court shares Defendants' concern that allowing a plaintiff to cherry-pick favorable mental health records and claim privilege over records weakening their emotional damages claims, thereby enabling the plaintiff to use the privilege as both a shield and sword.").

### iii. Good cause exists to enter City Defendants' proposed HIPAA Order.

In summary, because Wright has placed his respective physical, psychological, and emotional health and conditions at issue, good cause exists for Defendants to obtain health information and records to determine the cause, nature, extent, and duration of Wright's claimed injuries and conditions. Wright's medical and mental health providers will need a protective order addressing HIPAA (45 CFR § 162 and 164) and the Illinois Mental Health and Developmental Disabilities Act (740 ILCS 110/3) to release Wright's medical and mental health records to Defendants. Defendants' proposed HIPAA Order addresses Wright's privacy concerns and limits disclosure to persons involved in this litigation, including the parties and their respective counsel. Further, Wright's proposal that he be allowed to see any such records before Defendants is unnecessary.

### CONCLUSION

For the reasons set forth above, the Defendants respectfully request that this Court enter Defendants' proposed Confidentiality and HIPAA Orders over Wright's objection and enter a finding that Wright has waived any applicable privilege over his mental health and substance abuse treatment records and for such further relief as this Court deems appropriate.

## II. WRIGHT'S POSITION ON THE CONFIDENTIALITY AND HIPAA PROTECTIVE ORDERS

### INTRODUCTION

Plaintiff was not at all anticipating that the Defendants would use this submission to write a 15-page brief about these issues. Nonetheless, despite the lengthy submission, Defendants' position should be overruled. As it concerns the confidentiality order, there is fair or just reason to create a provision that treating the families of CPD officers or CCSAO members with special privileges that do not apply to other members in the community. All people should be treated equally before this Court.

As it concerns other people, whose information is in the relevant documents, it would be unfair and inappropriate to give Defendants a competitive advantage over witness contact information by permitting redaction of contact information. Under this regime, rather than conduct an independent (and privileged) investigation, Plaintiff would be required to ask Defendants to un-redact documents, and then confer about these items. In addition, the City has recently taken to arguing the "Juvenile Court Act" prohibits disclosure of information, even under protective order, that has been produced for years. Including this provision will only likely lead to further litigation when, almost inevitably, there is further disagreement about what is or is not covered by the Juvenile Court Act. If the documents contain private information, they can be marked confidential.

The other principle issue in dispute is whether the City should be permitted to make private documents that are public in nature simply because they are being produced here. The main category of documents is the City's disciplinary records, Complaint Register files. These documents are public under the Illinois Freedom of Information Act, *Kalven v. City of Chicago*, 2014 IL App. (1st) 121846, and nearly all of them have already been produced by Plaintiff in this

case. Police officer misconduct is something that should not be hidden under protective order, particularly in a lawsuit about police officer misconduct.

Nor has Plaintiff waived the psychotherapist privilege simply by filing this lawsuit. Continuing with the one-way-street vision of the world expressed in their confidentiality order, Defendants ignore David Wright's position. Here, David Wright was 17 years old, he spent nearly 30 years imprisoned for crimes he did not commit, and alleges that the injuries he suffered were the result of Defendants' conduct. On Plaintiff's perspective, David Wright did not chose to be wrongfully convicted; nor does he have any other adequate remedy at all for redressing the harm he obviously suffered from being wrongfully convicted. Merely asserting a damages claim does not waive the privilege.

### A.  Governing Legal Standards

At issue is whether the parties have the right to disseminate public documents in advance of trial or, alternatively, whether there is good cause to protect those documents from disclosure. Fed. R. Civ. P. 26(c)(1). The Supreme Court and Seventh Circuit have long recognized that litigants have a qualified First Amendment right to "'disseminate information discovered in advance of trial.'" *Bond v. Utreras*, 585 F.3d 1061, 1076 (7th Cir. 2009) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). This Court's review is thus governed by Rule 26(c)(1), which provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26 empowers this Court to fashion a protective order in the first place, and its good cause standard governs whether discovery can be disseminated in advance of trial or, alternatively, maintained as confidential. *Id.*; *see generally* 8A Wright, et al., Fed. Prac. & Proc. §§ 2035, 2036 & 2043 (3d ed. Apr. 2019 update).

As the party seeking to modify this Court's model order, Defendants bear the burden of showing good cause for their proposed protective order under Rule 26. *Central States, Se. v. Nat'l Lumber Co.*, 2012 WL 2863478, at *2 (N.D. Ill. July 11, 2012) (citing *Jepson, Inc. v. Makita Elec. Works*, 30 F.3d 854, 858 (7th Cir. 1994). This Court must balance the harm to the party seeking protection against the importance of public disclosure. *In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 341-42 (N.D. Ill. 2008). In short, the presumption is that documents exchanged in discovery can be disseminated by the parties unless good cause for a protective order exists.

### B. Plaintiff's Confidentiality Order Should Be Entered, as Defendants Other Modification Are Not Supported By Good Cause

The differing protective orders boil down, basically, to three items in dispute: (1) whether law enforcement will receive special treatment for their privacy interests that are not applicable to other third parties, (2) whether Defendants can have unilateral access to witness contact information that must then be requested from them by Plaintiff (revealing strategy and implicating work product) or define "confidential information" in a broad and unworkable manner, and (3) whether the City can attempt to "hide" public documents, mostly including CRs or other disciplinary records.

**1. First,** Defendants seek to insert protections for law enforcement that do not apply to other third-parties. Plaintiff's proposal is a simple two-way street: all third parties and family members should have privacy interests protected. Plaintiff's family members did not choose to have a teenager kidnapped from them by Chicago Police Department officers. Thus, if not disclosed as witnesses, and even where disclosed as witnesses, their privacy interests should be

maintained just the same as CPD or CCSAO family members with no information about this litigation.

**2. Second**, Plaintiff has no objection to treating personal identifying information as confidential. However, Defendants seek to *redact* this information, *prior* to production to Plaintiff. To be clear, to the extent redactions are necessary to protect police officers' privacy, Plaintiff has no objection; such protection can be also achieved by marking the documents confidential, which will prevent their dissemination. But Defendants' proposal seeks the authority to redact much more, including any personal identifying information of witnesses. This approach has been recently rejected in other cases. *See, e.g.*, *Henderson v. Boudreau*, 23 CV 4802, Dkt. 93.

The Defendants now cite the "Juvenile Court Act" for the inclusion of this effort. But, this is a distraction. For one, the City has entered protective orders for years without reference to this act. Instead, and recently, the City has started using this state court rule to try to restrict federal discovery. Doing should be rejected for both legal and practical reasons. As a legal matter, the Juvenile Court Act does not create a basis in the first place to redact information, as state statutes typically do not provide a basis to withhold information in federal litigation. *See* U.S. Const., Art. VI, cl. 2 (establishing that federal law is the "supreme Law of the Land"); *Wash. v. Wash. State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695 (1979) (state law does not superseded compliance with decrees from federal authority) Moreover, the Juvenile Court Act expressly *exempts* juvenile witnesses from its reach—precisely the information that the City seeks to redact. *See* 705 ILCS 405/1-3 ("'Juvenile law enforcement record' includes records of arrest, station adjustments, . . . or any other records or documents maintained by any law enforcement agency relating to a minor suspected of committing an offense, and records

20

maintained by a law enforcement agency that identifies a juvenile as a suspect in committing an offense, but does not include records identifying a juvenile as a victim, witness, or missing juvenile . . . .") (emphasis added). In *Walker v. Burge*, the Court rejected Defendants' argument that it should be permitted to redact information relating to juvenile witnesses, *Walker*, No. 21 C 4231, Dkts. 187, 188, and Defendants here have not identified good cause to permit such redactions.

As a practical matter, the Defendants' new proposed practice wreaks havoc in wrongful conviction cases, resulting in the City redacting key witness information in numerous documents, merely because the witness was—long ago—a juvenile. That has resulted in having to proceed to the juvenile criminal court to obtain records, a costly and unnecessary expense and effort. This also leads to litigation about what is or is not covered by the Juvenile Court Act in the first place (which the parties obviously disagree about).

As another practical matter—and one of practical unfairness—permitting Defendants to redact information that they have but Plaintiff does not will allow them to perform a gatekeeping function on what Plaintiff knows or does not know about certain witnesses. It will also risk disclosure of Plaintiff's work product in having to seek to obtain this information. But, Plaintiff should not be required to tell Defendants his strategy to obtain this information—he is already entitled to it. *See* Fed. R. Civ. 26(b) (defining the scope of discovery as nonprivileged information that is "relevant" to the party's claims and defenses); *Wofford v. Celani*, No. 11 C 3543, 2012 WL 2847549, at *1 (N.D. Ill. July 11, 2012) (observing that evidence that is potentially relevant under Federal Rule of Evidence 404(b) is discoverable under Federal Rule of Civil Procedure 26). Civil discovery permits Plaintiff to obtain information to investigate the facts, which certainly includes having sufficient information to accurately identify witnesses for

investigations. *Vakharia v. Swedish Covenant Hosp.*, No. 90 C 6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994) ("Parties are entitled to a reasonable opportunity to investigate the facts . . . .").

Under this approach, Defendants have unilateral access to uniquely identifying information for witnesses and do not need to disclose the timing or focus of their investigation to Plaintiff. This lopsided approach to discovery is not how civil litigation work *See Williams v. City of Chicago*, No. 22 C 1084, 2022 WL 10105656, at *9 (N.D. Ill. Oct. 17, 2022) (opining that a procedure that requires a plaintiff to reveal to an adversary which witness plaintiff's attorney is focused on provides a "road map" of the attorney's "intentions and priorities" which does not "facilitate discovery, and plainly violates the attorney work-product doctrine," resulting in a "demoralizing impact on the legal profession." "In short, requiring a litigant to drop breadcrumbs about what witnesses a litigant's attorney has deemed worthy of interview and investigation . . . is too close to the kind of piggybacking and invasion into attorney thought process that the Supreme Court prohibited in *Hickman* [*v. Taylor,* 329 U.S. 495 (1947)] and that federal courts including this one have eschewed ever since."). Plaintiff should not be required to assist in Defendants' defense by disclosing Plaintiff's investigative plans, or be hampered by Defendants' potentially flawed investigation in order to investigate facts in Plaintiff's case. This Court should not permit the redaction of already confidential documents.

Finally, Defendants' modified definition of "Confidential Information" adds overbroad and vague categories to the definition of "Confidential Information"—seeking protection for all "employment, disciplinary, or other information that is of a sensitive or non-public nature" regarding all parties and non-parties to the case. Such a broad definition—including any "other information" of a "sensitive or non-public nature"— improperly affords Defendants virtually

unlimited discretion to make subjective determinations about confidentiality—directly contrary to the careful, specific, and objective definition of Confidential Information provided in the Model Order. Defendants lack good cause for such a proposal.

**3. Third**, this Court should not let the City mark disciplinary documents or other things subject to public disclosure under FOIA as confidential. For more than a decade, parties to federal and state actions in Chicago litigated whether the City could hide CR files from public view. *See Calhoun v. City of Chicago*, 273 F.R.D. 421, 423 (N.D. Ill. 2011) (collecting cases). While the City fought to keep CR files secret, litigants and members of the public advocated for public release, arguing that citizen complaints against police officers, and the City's response thereto, were a matter of public concern. In 2014, the Illinois Appellate Court sided with the public, holding that CR files are subject to public disclosure under IFOIA. *Kalven*, 2014 IL App. (1st) 121846. CR files are thus public documents, subject to certain statutory redaction.

This Court's model protective order specifically excludes publicly available documents from the list of protected categories: "Information or documents that are available to the public may not be designated as Confidential Information." This Court's Model protective order forbids what the City wants here: to refuse to produce publicly available information. There is no good reason for moving backwards in this manner. Indeed, since *Kalven* was decided in 2014, the weight of authority in this District holds that the City cannot designate entire CR files as "Confidential Information" under federal protective orders. *Williams v. City of Chicago*, 2022 WL 10105656, at *12 (N.D. Ill. Oct. 17, 2022) ("The model protective order does not allow entire CR files to be redacted or withheld, and the Court has refused to take that step, in a nod to Kalven."). Though it has now switched its tune, after *Kalven* the City has proposed protective orders allowing for public release of CR files. *See, e.g.*, *In re: Watts Coord. Pretrial Proceedings*,

23

Master Docket Case No. 19 C 1717 (N.D. Ill.), Dkt. 57; *Walker v. Burge*, et al., No. 21 C 4231, Dkts. 187, 188 (N.D. Ill. Feb. 2, 2023); *Fletcher v. Bogucki*, et al., No. 20 C 4768, Dkt. 55 (N.D. Ill. Sep. 27, 2021); *Prince v. Kato*, 2019 WL 3554533, at *3 (N.D. Ill. July 30, 2019); *Sierra v. Guevara*, et al., No. 18 C 3029, Dkt. 118 (N.D. Ill. June 7, 2019); *Batchelor v. City of Chicago*, No. 18 C 8513, Dkt. 58 (N.D. Ill. June 10, 2019); *Jackson v. City of Chicago*, 2017 WL 5478303, at *2 (N.D. Ill. Nov. 14, 2017); *Jacobs v. City of Chicago*, 2015 WL 231792, at *2 (N.D. Ill. Jan. 16, 2015); *Sokol v. City of Chicago*, 2014 WL 5473050, at *3 (N.D. Ill. Oct. 29, 2014); Kuri v. City of Chicago, No. 13 C 1653 (N.D. Ill. June 6, 2014), Dkt. 77 at 3; Viramontes v. City of Chicago, 2014 WL 12775316, at *2 (N.D. Ill. June 2, 2014); *Jackson v. City of Chicago*, No. 22 C 4337 (N.D. Ill. May 10, 2023), Dkt. 27.

### C. Plaintiff Should Be Permitted to Review Any Psychotherapy Records Before Determining Whether Privilege Will be Invoked

#### 1. *This Court Should Permit Plaintiff A Short Review for Privilege Rather than Rule on Waiver Issues in the Abstract*

This Court need not weigh-in on whether there is a waiver of psychotherapist privilege in the abstract. Plaintiff has yet to make an election about whether he will use expert testimony to support his damages claims. And, the Court can avoid going into the thicket of different approaches to implied waiver by simply agreeing to Plaintiff's proposal: permit Plaintiff to conduct a short, time-limited review of any obtained documents to determine whether privilege will be invoked and then any issue will be carefully teed up (rather than abstract) and litigation can be avoided if Plaintiff does not assert privilege. Judge Kendall recognized the upsides of this approach in a wrongful conviction case over a decade ago. *Caine v. Burge,* 2012 WL 6720597, at *4 (N.D. Ill. Dec. 27, 2012). Such an order has also been somewhat recently entered in litigation involving many of the same defendants. *Henderson v. Boudreau*, 23CV 4802, Dkt. 92, attached

as Exhibit 6. Indeed, Many courts in this District have agreed to this arrangement. *See, e.g.,*
*Martinez v. Guevara*, 23-cv-01741 (N.D. Ill.), Dkt. 114; *Gonzalez v. Guevara*, No. 22-cv-6496
(N.D. Ill. Aug. 21, 2023), Dkt. 128 at 4; *Rodriguez v. Guevara*, No. 18-cv-7951 (N.D. Ill. Feb.
11, 2020), Dkt. 78 at 2 *Billups-Dryer v. Sheehan*, 20-cv-1597 (N.D. Ill. Dec. 7, 2022), Dkt.
101; *Hill/Fountain v. Chicago*, 19-cv-6081 (N.D. Ill. Mar. 11, 2020), Dkt. 63 at 2; *Liggins v.
Chicago*, 20-cv-4085 (N.D. Ill. Mar. 31, 2021), Dkt. 47; *Anderson v. Chicago*, 16-cv-1963 (N.D.
Ill. Nov. 29, 2016), Dkt. 89 at 3; Dkt. 101; *Glaze v. Chicago*, 14-cv-3120 (N.D. Ill. Dec. 17,
2014), Dkt. 92 at 3; *Awalt v. Marketti*, 287 F.R.D. 409, 416-17 (N.D. Ill. 2012).[4]

At the end of the day, as expressed in the conferral process, Plaintiff's significant concern
is that discovery will intrude into Plaintiff's childhood. It is premature at this moment to
determine whether any records will involve these sorts of issues, and Plaintiff has worked to
produce materials sought by the Defendants. As a result, as in most wrongful conviction cases, it
is highly likely that at the end of the day there may not be any document over which the
psychotherapist-patient privilege might be asserted, or the plaintiffs will choose not to assert that
privilege over qualifying documents, and so the parties would avoid litigating and the Court
would avoid having to decide a privilege issue that would otherwise have never been presented
in the case. The production of material—like from Plaintiff's childhood—is not the sort of things
anticipated by most of the discovery and so it makes sense to include a safety-valve to ensure
that nothing ends up being discovered or produced that should not be. The proverbial bell cannot
be "un-rung" if defendants learn of these materials—Plaintiff's privacy rights will have already
been impacted.

---

[4] The City and CPD officers have agreed to it, too, in other cases. But, have refused here.

Examples include mental health records relating to instances of abuse unrelated to the claims, mental health information about family members (particularly where the family are not witnesses), or other sensitive mental health records that have been deemed by courts to be irrelevant or privileged. For example, in recent litigation, Judge Kennelly permitted the same privilege review requested here in another wrongful conviction case for precisely this reason: "I can imagine a scenario in which somebody's mental health records included something when they were a little kid where they had been . . . in some sort, of . . . school-associated mental health treatment that might not have any bearing on, and conceivably might not be waived by, a claim for emotional distress and related damages and something that happens . . . a good number of years later. *Galvan v. Switski*, No. 238 C3158, Tr. Of 2/8/24, attached as Exhibit 7. "[T]he fact that there's a possibility of something" that might be privileged even under "the broadest view of . . .[the] implicit waiver principle . . . counsels in favor of" keeping a 7-day privilege review. *Id*. at 4. This Court should enter the same.

### 2. *Plaintiff Has Not Waived Psychotherapist Privilege Simply By Making a General Claim for Emotional Distress Damages*

The foregoing is sufficient to deny Defendants proposed order. But, should the Court wish to go further, law in this area is briefly described.

In *Jaffe v. Redmond*, 518 U.S. 1, (1996), the Supreme Court recognized that "confidential communication between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. at 15. *Jaffe* explained that the purpose of the privilege is to promote the public interest in the honest exchange of communication between a psychotherapist and their patient by establishing that information about the patient's mental health will not be disclosed to

third-parties. *Id.* at 10-12. *Jaffe* also made clear that issues of privilege should be handled on a case-by-case basis. *Id.* at 18.

While Defendants are correct that a privilege *can* be waived, *Awalt v. MArketti*, 287 F.R.D. 409, 417 (N.D. Ill. 2012) (Kendall, J.), Defendants are wrong that simply bringing a claim for emotional distress waives the privilege. *See, e.g.*, *Santos v. The Boeing Co.*, No. 02 C 9310, 2003 WL 23162439, at *1 (N.D. Ill. Oct.21, 2003) ("The fact that Santos seeks damages for emotional distress does not in itself justify allowing Boeing to pry into Santos' mental health records."); *Hucko v. City of Oak Forest*, 185 F.R.D. 526, 530 (N.D. Ill. 1999) (noting that the "application of the principles set forth a Third Circuit decision favorably cited by the Seventh Circuit "reveal[] that the plaintiff in this case has not waived the psychotherapist-patient privilege merely by asserting that the defendants' alleged misconduct caused him to suffer emotional harm"). The defendants are also mistaken that the garden variety view would find waiver from simply bringing an emotional distress claim, too. *Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011) (Cole, Mag.) ("Since *Jaffee*, most courts have held that claims of 'garden variety' emotional damage do not result in a waiver of the psychotherapist/patient privilege."); *EEOC v. Area Erectors, Inc.*, 247 F.R.D. 549, 552 (N.D. Ill. 2007) (Mahoney, Mag.) (noting that "In the Northern District of Illinois, Judge Kennelly's opinion in *Santelli v. Electro–Motive* supplies the most appealing approach"); *see also Hucko v. Oak Forest*, 185 F.R.D. 526 (N.D. Ill. 1999) (Schenkier, Mag.) (adopting the middle-ground approach in 1999 before *Santelli*). Under this path, "'[w]here a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress, that plaintiff has not placed his/her mental condition at issue to justify a waiver of the psychotherapist-patient privilege.'" *Awalt*, 287 F.R.D. at 417 (quoting *Koch v. Cox*, 489 F.3d

384, 390 (D.C. Cir. 2007)). Indeed, the "overwhelming weight of authority in this District holds that an individual's medical records are not discoverable unless that individual has placed her psychological state in issue by claiming more than mere 'garden variety' psychological injuries" *EEOC v. DHL Express*, 2011 WL 6825497, at \*6 (N.D. Ill. Dec. 27, 2011) (St. Eve., J.).

Keeping in mind that *Jaffee* endorsed a case-by-case rather than categorical approach, the inquiry focuses on whether the damages at issue are those that "naturally flow from the defendants' alleged misconduct," *Awalt*, 287 F.R.D. at 418, or, put differently, whether the testimony will be limited to "the negative emotions experienced essentially as the intrinsic result of the defendant's alleged conduct," *Santelli v. ElectroMotive*, 188 F.R.D. 306, 208-09 (N.D. Ill. 1999). Thus, "when a plaintiff seeks damages for emotional distress for which they later sought psychotherapeutic treatment or otherwise affirmatively puts the privileged communication directly at issue in the lawsuit, the privilege is waived and the defendant is entitled to discover otherwise privileged information concerning the plaintiff's mental health. By contrast, "where the plaintiff's claim for emotional distress damages are limited to those that naturally flow from the defendants' alleged misconduct the privilege remains intact and can be asserted by the plaintiff to prevent mental health records from compelled disclosure—that is, claims for 'garden variety' emotional distress damages do not waive the privilege." *Awalt*, 287 F.R.D. at 418.

Because a plaintiff is always the master of her claims, it is a decision for a Plaintiff to make during the litigation. *Caine v. Burge*, 2012 WL 6720597, at \*4 (N.D. Ill. Dec. 27, 2012); *Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011). As a result, a plaintiff has a choice to make and can make a choice about whether to cabin their damages claims to those that "naturally flow" from the alleged misconduct, and accept the evidentiary limitations of that decision, or whether to make a more extensive examination into how the alleged misconduct affected the

28

plaintiff. In *Caine*, the first wrongful conviction case on the issue in this District, the Court recognized that it is "the plaintiff's strategic decision whether to limit damages to 'garden-variety' and thereby maintain the psychotherapist privilege." 2012 WL 6720597, at * 4 (citing *Flowers*, 274 F.R.D. at 229). That choice came with a consequence, of course. As *Santelli* explained: "even though limiting damages might "prevent her from fully recovering for her alleged emotional distress .... [t]he choice, however, is hers" 188 F.R.D. at 309; *see also, e.g.*, *EEOC v. Area Erectors, Inc.*, 247 F.R.D. 549, 552 (N.D. Ill. 2007) (discussing plaintiff's choice about extent of damages claims).

    *Flowers* is instructive. There, an inmate brought a claim against his jailers alleging that "he was beaten while in custody." 274 F.R.D. at 220. The parties agreed that plaintiff would not "introduce any expert testimony at trial regarding his emotional suffering, and that he was limiting his claim to what is often called 'garden variety' emotional damages." *Id.* The plaintiff at his deposition testified that he was afraid to leave his home, and claimed that it was due to the fact of being beaten at the jail, and that he was constantly in fear of the defendants in his suit. *Id.* Plaintiff's counsel then "announced that he planned to introduce evidence at trial that plaintiff 'does not want to leave his home because he's afraid of the defendants,' whom he believes will retaliate against him. *Id.* at 221. The parties disagreed as to whether this testimony and announcement constituted garden variety damages, and the plaintiff moved to bar testimony related to plaintiff's mental health records and psychotherapy. In the end, the defendants were concerned that Plaintiff's testimony might be a subtle reference to agoraphobia and the Court thought some of the plaintiff's deposition testimony was itself a reference to PTSD-like symptoms.

The Court ultimately decided that plaintiff's counsel had not sufficiently clarified the proposed limitations on the proposed testimony to determine whether it the damages claim was going to be limited to the sort of harms that naturally flow from the alleged misconduct or whether they went beyond. *Id.* at 228-29. Nonetheless, the Court was clear that the determination of what sorts of damages claims would be made at trial was "a choice exclusively for Mr. Flowers and his counsel to make." *Id.* at 228. Thus, the Court held:

> Without a complete explication of what it is that is being proposed by the plaintiff, it cannot be said with assurance that the trial testimony expressly envisioned by the plaintiff's counsel will, in fact, be limited to the kind of simple, usual, and ordinary emotions approved by the cases. And if it is not, the plaintiff cannot insist on maintaining the psychotherapist/patient privilege. The choice of how to proceed is the plaintiff's.

*Id.* at 229. The upshot of *Flowers* and the other authorities like *Caine*, *Santelli*, and *Area Erectors* is that plaintiffs can cabin their damages claims to keep intact the privilege—even where they have provided discovery about things that might arguably go beyond the scope of "garden variety"—where they agree not to present such evidence at trial.

Here, Plaintiff has not made an election that goes beyond "garden variety" damages. While it is true—and unavoidably true—that the damages at issue in this case are substantial, they do not involve a claim that puts at issue any psychological treatment or evaluation of Plaintiff. As a result, at this point in time, Plaintiff cannot have been found to have waived the privilege. As a result, good cause does not exist for entry of the Defendants HIPPA order finding otherwise.

## CONCLUSION

The Defendants have not shown good cause for entry of confidentiality protections that depart from, and subvert, this Court's model protective order. Nor has Plaintiff waived his

psychotherapist privilege. As a result, Plaintiff asks that his proposed orders be respectfully entered.

Date: January 10, 2025                                          Respectfully submitted,

/s/ Brittany D. Johnson                                       /s/ Kyle T. Christie
BRITTANY JOHNSON                                    KYLE T. CHRISTIE, Atty. No.
*One of the Attorneys for Officer Defendants*   6335693
                                                                          *One of the Attorneys for Defendant City of*
                                                                          *Chicago*

Andrew J. Grill                                                   James G. Sotos
Eileen Rosen                                                     Lisa M. Meador
Brittany Johnson                                                Kyle T. Christie
Patrick Moran                                                    Claudia C. Fantauzzo
Stacy A. Benjamin                                             Jeffrey C. Grossich
Rock Fusco & Connelly, LLC                           THE SOTOS LAW FIRM, P.C.
333 W. Wacker Drive, 19th Floor                     141 W. Jackson Blvd, Suite 1240A
Chicago, IL 60606                                             Chicago, IL 60604
Tel: (312) 494-1000                                          Tel: (630) 735-3300
                                                                          kchristie@jsotoslaw.com

/s/ Stephen Mehr                                             /s/ David Owens
STEPHEN MEHR,                                             DAVID OWENS
*One of the Attorneys for Defendant Klaczynski*   *One of the Attorneys for Plaintiff*

Matthew R. Howroyd                                        David Owens
Stephen Mehr                                                   Jonathan Loevy
Michael Stephenson                                         Elizabeth Wang
James Lydon                                                    Loevy & Loevy
Hinshaw & Culbertson LLP                              311 N. Aberdeen St.
151 North Franklin Street, Suite 2500              Chicago, IL 60607
Chicago, IL 60606                                            Tel: (312) 243-5900
Tel: (312) 704-3000

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on January 10, 2025, I electronically filed the foregoing **Parties' Joint Motion Over Competing Protective Orders** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed below.

**_Attorneys for Plaintiffs:_**
Elizabeth C. Wang
Loevy & Loevy
2060 Broadway, Ste. 460
Boulder, CO 80302
Tel: (708) 328-5642
elizabeth@loevy.com

David B. Owens
Jonathan Loevy
Loevy & Loevy
311 N. Aberdeen St.
Chicago, IL 60607
Tel: (312) 243-5900
david@loevy.com
jon@loevy.com

**_Attorney for Cook County, Illinois:_**
Joseph A. Hodal
Miguel E. Larios
Cook County State's Attorney's Office
50 W. Washington St.
Chicago, IL 60602
Tel: (312) 603-5470
joseph.hodal@cookcountysao.org
miguel.larios@cookcountysao.org

**_Attorneys for Steven Klaczynski:_**
Matthew R. Howroyd

Stephen D. Mehr
Michael C. Stephenson
James M. Lydon
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Tel: (312) 704-3000
mhowroyd@hinshawlaw.com
smehr@hinshawlaw.com
mstephenson@hinshawlaw.com
jlydon@hinshawlaw.com

**_Attorneys for Officers Boudreau, Cassidy, Gandurski, Halloran, and Zuley:_**
Eileen Rosen
Andrew J. Grill
Brittany D. Johnson
Stacy A. Benjamin
Patrick R. Moran
Rock Fusco & Connelly, LLC
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
Tel: (312) 494-1000
erosen@rfclaw.com
agrill@rfclaw.com
bjohnson@rfclaw.com
sbenjamin@rfclaw.com
pmoran@rfclaw.com

/s/ Kyle T. Christie
KYLE T. CHRISTIE, Atty. No. 6335693
*One of the Attorneys for Defendant City of Chicago*